BEECHER LIMITED, Plaintiff-Appellant,
v.
ALVAREZ & MARSAL NORTH AMERICA, LLC, Liquidating Trustee of the Azabu Liquidating Trust Dated July 10, 2007;[1] WAIKIKI FIRST FINANCE CORP.; WAIKIKI SF CORPORATION; AZABU U.S.A. CORPORATION; HYATT CORPORATION, Defendants-Appellees, and
THE CHUO MITSUI TRUST AND BANKING COMPANY, LIMITED; and DEFENDANTS DOES 1 through 100, Defendants.
No. 28011.
Intermediate Court of Appeals of Hawaii.
March 7, 2008.
On the briefs:
James N. Duca (Lyons Brandt Cook & Hiramatsu) (Cori Ann C. Takamiya, of Kessner Umebayashi Bain & Matsunaga, with him on the reply briefs) and Bruce Bennett (admitted pro hac vice), Sidney P. Levinson (admitted pro hac vice), and Michael J. Heyman (admitted pro hac vice) (Hennigan, Bennett & Dorman LLP) for plaintiff-appellant.
James T. Paul, Corey Y.S. Park, Sheryl L. Nicholson, and Judy A. Tanaka (Paul Johnson Park & Niles) for defendants-appellees Alvarez & Marsal North America, LLC (formerly, Azabu Buildings Co., Ltd.), and Azabu U.S.A. Corporation.
James A. Wagner and Chuck C. Choi (Wagner Choi & Evers) for defendant-appellee Alvarez & Marsal North America, LLC (formerly, Azabu Buildings Co., Ltd.).
Paul Alston, Neil F. Hulbert, Thomas E. Bush, and Tina L. Colman Alston Hunt Floyd & Ing) for defendants-appellees Waikiki First Finance Corp. and Waikiki SF Corporation.

MEMORANDUM OPINION
WATANABE, Presiding J., FOLEY, and NAKAMURA, JJ.
This appeal stems from an action filed by Plaintiff-Appellant Beecher Limited (Beecher) in the Circuit Court of the First Circuit (the circuit court) on July 23, 2004, which sought to foreclose on the Hyatt Regency Waikiki Resort & Spa Hotel (the Hyatt Regency) and collect on a judgment that had been entered in Japan against Defendant-Appellee Azabu Buildings Co., Ltd., now Alvarez & Marsal North America, LLC, Liquidating Trustee of the Azabu Liquidating Trust Dated July 10, 2007,[2] (Azabu Buildings) on July 21, 1993. We affirm the judgment and orders challenged by Beecher on appeal.

BACKGROUND
On July 21, 1993, The Mitsui Trust & Banking Co. Ltd., now known as The Chuo Mitsui Trust and Banking Company, Limited (Chuo), obtained a tegata-hanketsu (the 1993 Judgment) for 4,081,033,192 yen (¥4, 081, 033,192) against Azabu Buildings from the Tokyo District Court, Civil Court Department 7 (Tokyo District Court), pursuant to "an expedited procedure applicable to promissory notes."
Azabu Buildings objected to the 1993 Judgment, and the case proceeded to a full hearing on the merits before the Tokyo District Court, which upheld the 1993 Judgment on March 31, 1995.
Azabu Buildings then filed a koso appeal to the three-judge Tokyo High Court. On February 28, 1996, the Tokyo High Court "dismissed" the koso appeal and upheld the 1993 Judgment. Azabu Buildings did not file a jokoku appeal to the Japan Supreme Court within the required two-week period; thus, the 1993 Judgment became final and binding on or about March 14, 1996.
In 1998, Chuo sold the right to collect on the 1993 Judgment to Japan Realty Investors Limited, which, in November 2000, sold the right to Beecher, a Gibralter corporation.
On January 3, 2002, Beecher filed a copy of the 1993 Judgment as a Foreign Judgment (Foreign Judgment) in the circuit court in Special Proceeding No. 02-1-0008. Beecher then recorded the Foreign Judgment with the Hawai`i Bureau of Conveyances as Document No. 2002-001874 and claims to have recorded the Foreign Judgment with the Hawai`i Land Court as Document No. 2767953, thereby creating a lien on the Hyatt Regency, which was owned by Azabu Buildings. Thereafter, Beecher sought to have the Foreign Judgment enforced pursuant to the Uniform Foreign Money-Judgments Recognition Act (UFMJRA), Hawaii Revised Statutes (HRS) chapter 658C.
On July 23, 2004 and October 12, 2004, Beecher filed a complaint and first amended complaint, respectively, against Azabu Buildings, Defendants Chuo and Hyatt Corporation, and Defendants-Appellees Azabu U.S.A. Corporation (Azabu USA), Waikiki First Finance Corp (Waikiki First), and Waikiki SF Corporation (Waikiki seeking to foreclose on the Hyatt Regency and collect the amount owed by Azabu Buildings on the Foreign Judgment, plus interest. Beecher alleged that Waikiki First and Waikiki SF (collectively, Waikiki Defendants) and Azabu USA claimed various mortgage liens and security interests on property owned by Azabu Buildings, including the Hyatt Regency. (Azabu Buildings and Azabu USA will be referred to collectively as Azabu Defendants, and Azabu Buildings, Azabu USA, Waikiki First, and Waikiki SF will be referred to collectively as Appellees.)
On August 3, 2004, Beecher filed a notice of pendency of the foreclosure action.
On April 8, 2005, Beecher filed a motion for summary judgment and decree of foreclosure against Azabu Buildings or, in the alternative, for appointment of a receiver. On August 3, 2005, the circuit court[3] entered an order denying the motion on grounds that "[t]he record does not demonstrate that [Beecher] is entitled to judgment as a matter of law that the [Foreign Judgment] and the associated lien are presently viable for the purpose of enforcement in Hawai`i."
On August 16 and 18, 2005, respectively, Azabu Defendants and Waikiki Defendants filed separate motions for summary judgment, seeking to dismiss with prejudice all claims alleged in Beecher's First Amended Complaint, on grounds that enforcement of the Foreign Judgment was barred by the statute of limitations set forth in HRS 657-1(2) (1993),[4] relating to limitation of personal actions, and 657-5 (Supp. 2001), relating to domestic judgments and decrees. On October 26, 2005, following a hearing held on these motions, the circuit court entered an order granting the motions and dismissing with prejudice the claims asserted against Appellees in Beecher's First Amended Complaint.
On November 10, 2005, various creditors, including Beecher, filed an amended involuntary petition with the United States Bankruptcy Court for the District of Hawai`i (the bankruptcy court), thereby initiating a Chapter 11 reorganization proceeding on behalf of Azabu Buildings. On Febryary 7, 2006, Beecher filed a notice of removal of the underlying foreclosure action to the bankruptcy court, but on May 26, 2006, the bankruptcy court entered an order remanding the foreclosure case to the circuit court.
On June 23, 2006, the circuit court entered a Final Judgment of Dismissal in favor of Appellees on all counts of the First Amended Complaint. The Final Judgment of Dismissal also dismissed Chuo and Hyatt Corporation (collectively, Defendants) from the case without prejudice. This appeal followed.

ISSUE ON APPEAL
Beecher argues that the circuit court erred in granting Appellees' motions for summary judgment because the time limitations set forth in HRS § § 657-1(2) and 657-5 did not bar enforcement of the Foreign Judgment.

DISCUSSION

A.
It is a general principle of law that
[e]very judgment gives rise to a common-law cause of action to enforce it, called an action upon a judgment. At common law, a party has a right of action upon a judgment as soon as it is recovered, in addition to the right to take out execution. In effect, a judgment creates a new cause of action (or a chose in action) on which a new and independent action may be based.
47 Am. Jur. 2d Judgments § 762 (2006) (footnotes omitted). With respect to judgments rendered by a foreign jurisdiction,
[t]raditionally, litigants have not been able to enforce foreign judgments directly in the [United States (U.S.)]; they have first been required to persuade a U.S. court to recognize the judgment and convert it to its own judgment, which can then be enforced. Recognition occurs when the U.S. court concludes that the underlying matter has already been decided by another court's judgment and will not be litigated further.
Daniel D. Smith, Invalidity of Judgment of Court of Foreign Country, 9 Am. Jur. Proof of Facts 3d (9 POF3d) § 5, at 704 (1990) (footnotes omitted).
Prior to April 24, 1996, a creditor seeking to enforce in Hawai`i courts a judgment rendered by a court of record in any foreign jurisdiction was required to bring a separate action upon that judgment, subject to HRS § 657-9 (1993),[5] "within six years next after the cause of action accrued, and not after[.]" HRS § 657-1(2). A creditor seeking to enforce a judgment "rendered in any court riot a court of record in any foreign jurisdiction" was required, subject to HRS § 657-9, to bring an action upon the judgment "within four years after the cause of action accrued, and not after." HRS § 657-6 (1993).
In 1996, the Hawaii Legislature enacted the Uniform Foreign Money-Judgments Recognition Act (UFMJRA), which was subsequently codified as HRS chapter 658C. See 1996 Haw. Sess. L. Act 49, § 1-3 at 69-71. The UFMJRA applies to "any foreign judgment that is final, conclusive, and enforceable where rendered even though an appeal therefrom is pending or is subject to appeal." HRS § 658C-3 (Supp. 2007). Under the UFMJRA,
[e]xcept as provided in section 658C-5,[6] a foreign judgment meeting the requirements of section 658C-3 shall be conclusive between the perties to the extent that it grants or denies recovery of a sum of money. A copy of any foreign judgment may be filed in the office of the clerk of an appropriate court of this State. The foreign judgment shall be enforceable in the same manner as the judgment of a sister-state that is entitled to full faith and credit.
HRS § 658C-4 (a) (Supp. 2007) (footnote added). Enforcement of a sister-state judgment is governed by HRS chapter 636C, the Uniform Enforcement of Foreign Judgments Act (UEFJA), which sets forth procedures to allow Hawai`i courts to recognize sister-state judgments once a copy of an exemplified judgment rendered in a sister state is filed in the office of the clerk of the appropriate court of this State. See HRS §§ 636C-3 (1993), relating to filing and status of foreign judgments, 636C-4 (1993), relating to notice of filing, and 636C-5 (1993), relating to stay.
A judgment of a sister state filed in the office of the court clerk pursuant to HRS chapter 636C "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this State, including establishing a lien, and may be enforced or satisfied in like manner." HRS § 636C-3. A judgment of a court of this State is subject to HRS § 657-5, which provides:
Domestic judgments and decrees. Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended. No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and the filing a non-hearing motion or a hearing motion to extend the life of the judgment or decree.
It is not clear under the UFMJRA whether the mere act of filing a foreign court's judgment with the clerk of the appropriate court is sufficient to convert the judgment into a domestic judgment for enforcement purposes or whether an action on the foreign court's judgment, with opportunity for the debtor to raise grounds for non-recognition of the judgment, is required before recognition of the judgment can be effectuated. See 9 POF3d 687 § 5 at 706, observing that
[a]s a practical matter, recognition is still required in most states as a prerequisite to enforcement of foreign judgments, since the two uniform acts do not specify a method for the conversion of the monetary amount to U.S. currency. Thus, the clerk of the court cannot register the judgment and translate it into U.S. currency without some guidance from the court as to the date for determining the exchange rate. Moreover, a judicial hearing may be necessary in order to seek authentication of the foreign judgment.
(Footnotes omitted.)
The UFMJRA is also silent as to whether the filing of a foreign court's judgment with the clerk of the court is subject to the six-year statute of limitations set forth in HRS § 657-1(2) for "[a]ctions upon judgments or decrees rendered... in any court of record in any foreign jurisdiction[,]" an issue hotly disputed during the proceedings below and on which there is great disagreement among courts of other jurisdictions.

B.
We need not resolve this issue, however, because we conclude that the provisions of the UFMJRA, HRS chapter 658C, did not apply to Beecher's Foreign Judgment.
The UFMJRA was enacted into law by the 1996 legislature pursuant to Act 49 and took effect upon its approval by the Governor on April 24, 1996 Haw. Sess. L. Act 49, § 3 at 70-71. Section 2 of Act 49 specifically provides: "This Act shall not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date," 1996 Haw. Sess. L. Act 49, § 2 at 71. Although the parties dispute exactly when the Foreign Judgment became "final" for purposes of triggering any applicable statutes of limitation, there appears to be no dispute that, at the very latest, the 1993 Judgment became "final" in March 1996 when the Tokyo High Court dismissed Azabu Buildings' koso appeal and Azabu Buildings did not file a jokoku appeal to the Japan Supreme Court. Since the proceedings in Japan were begun and bee her rights to enforce the Foreign Judgment had matured before the effective date of Act 49, the UEFMJA was not applicable to the Foreign Judgment.
It was therefore incumbent on Beecher, if it wished to domesticate the 1993 Judgment in Hawai`i, to bring an action upon the 1993 Judgment within six years after the cause of action to sue upon the 1993 Judgment had accrued. HRS § 657-1. Even if we were to assume that Beecher's cause of action on the 1993 Judgment accrued in March 1996, upon Azabu Buildings's failure to file a jokoku appeal, the record is clear that Beecher did not file an action on the 1993 Judgment within the required statute-of-limitations period. Indeed, Beecher admits in its opening brief that registration of a foreign judgment is not an "action" subject to the statute of limitations set forth in HRS § 657-1(2).
Accordingly, we affirm the following: (1) the Final Judgment of Dismissal entered by the circuit court on June 23, 2006 that (a) entered judgment in favor of Appellees and against Beecher on all claims, and (b) dismissed without prejudice Beecher's First Amended Complaint against Defendants; (2) the "Order Denying [Beecher's] Motion for Summary Judgment Against [Azabu Buildings] and Decree of Foreclosure, or in the Alternative, for Appointment of Receiver filed on August 8, 2005" entered by the circuit court on August 3, 2005; and (3) the "Order Granting (A) [Azabu Defendants'] Motion for Summary Judgment Dismissing First Amended Complaint Filed on October 12, 2004 with Prejudice or, in the Alternative, for Summary Judgment in Favor of [Azabu Defendants] and against [Beecher] on All Counts of the First Amended Complaint, Filed on August 16, 2005, and (B) Motion for Summary Judgment by [Waikiki Defendants] against [Beecher], Filed on August 18, 2005[,]" entered by the circuit court October 26, 2005.
NOTES
[1] On November 5, 2007, this court approved the motion filed by Azabu Buildings Co., Ltd. and Azabu U.S.A. Corporation to substitute Alvarez & Marsal North America, LLC, Liquidating Trustee of the Azabu Liquidating Trust Dated July 10, 2007, for Azabu Buildings Co., Ltd. as a Defendant-Appellee.
[2] See footnote 1.
[3] The Honorable Karen N. Blondin presided over all proceedings relevant to this appeal.
[4] HRS § 657-1(2) (1993) states:

Six years. The following actions shall be commenced within six years next after the cause of action accrued, and not after:
. . . .
(2) Actions upon judgments or decrees rendered in any court not of record in the State, or, subject to section 657-9, in any court of record in any foreign jurisdiction[.]
[5] HRS § 657-9 (1993) provides:

Action barred in foreign jurisdiction. When a cause of action has arisen in any foreign jurisdiction, and by the laws thereof an action thereon cannot there be maintained against a person, by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a domiciled resident thereof, who has held the cause of action from the time it accrued.
[6] HRS § 658C-5 (Supp. 2007) provides:

Grounds for non-recognition. (a) A foreign judgment shall not be conclusive if:
(1) The judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) The foreign court did not have personal jurisdiction over the defendant; or
3) The foreign court did not have jurisdiction over the subject matter.
(b) A foreign judgment need not be recognized if:
(1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable the defendant to defend;
(2) The judgment was obtained by fraud;
(3) The cause of action on which the judgment is based is repugnant to the public policy of this State;
(4) The judgment conflicts with another final and conclusive judgment;
(5) The proceedings in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or
(6) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.